UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA      :
                              :
v.                            :      **Criminal Case No. 14-CR-230 (RC)**
                              :
DANIELA GREENE,               :
                              :
Defendant.                    :

## GOVERNMENT'S MOTION FOR DEPARTURE AND
## MEMORANDUM IN AID OF SENTENCING

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby moves the Court for a departure from the applicable Sentencing

Guidelines pursuant to U.S.S.G. § 5K1.1. Further, the Government submits that a sentence of 24

months of incarceration to be followed by three years of supervised release would adequately

serve the interests of justice as codified in 18 U.S.C. § 3553(a). In support of this motion, and to

assist the Court in fashioning an appropriate sentence, the Government submits the following:

## FACTUAL BACKGROUND[1]

1      On or before February 03, 2011, Greene, who speaks and writes fluent German,

was hired by the FBI as a Contract Linguist and granted a Top Secret security clearance.

2.      In or around January 2014, Greene began working with the Detroit Division of the

FBI in an investigative capacity. Some of her duties involved support of an investigation against

a ████████ national, located in Syria, hereinafter referred to as "Individual A." Individual A is a

leader of an al-Qaeda-inspired Salafist terrorist organization that is banned ████████ due to

the participation of its members in violent protests. At all times pertinent to this case, Individual

---

[1] In addition to the explication contained herein, the Government is filing a Classified Addendum to the instant
pleading to supply the Court with certain information in relation to the offense and the defendant's cooperation
which remains classified

A was located in Syria and was a member of the Islamic State of Iraq and the Levant (hereinafter referred to as "ISIL.") ISIL is a foreign terrorist organization, currently attempting to establish a caliphate in Syria and other portions of the Middle East through violent terrorist activity. ISIL is designated by the U.S State Department as a Foreign Terrorist Organization and was so designated at all times relevant to this case.

3.      During the period of Greene's work in support of the investigation into Individual A, Individual A announced his sworn allegiance to ISIL, and called on Muslim fighters from all over the world to come to Syria to support the group. He made these statements in articles and videos published on Twitter and other online sources. At all relevant times, Greene was aware that Individual A was a member of ISIL, that Individual A was engaging in acts of terrorism, that ISIL was engaging in terrorism, and that ISIL was designated by the U.S. State Department as a Foreign Terrorist Organization.

4.      On or about June 11, 2014, Greene told her FBI supervisor and the Chief Security Officer ("CSO") at the ██████ Division of the FBI that she intended to travel to ██████ Germany, to see her family on June 21, 2014. Prior to her travel, Greene was required to submit an FD-772, Report of Foreign Travel form, a requirement for all FBI employees and contractors who hold National Security clearances. The purpose of the form is to identify and minimize the potential risks of unofficial foreign travel, both to FBI personnel and to national security and sensitive information.

5.      Greene submitted and electronically signed an FD-772, Report of Foreign Travel form, on or about June 11, 2014. On the FD-772, Greene reported her intention to travel to ██████ Germany, on June 21, 2014. Greene listed her travel as "Vacation/Personal" and described the reason for her late submission of the form as: "Want to see my family ██████

2

███████. Greene listed her parents as her destination contacts and her scheduled return date as July 4, 2014.

6.    On or about June 18, 2014, Greene's FD-772 was approved by a security officer in the ████████ Division. An original copy of the FD-772 was then printed out and sent to the Records Management Division (RMD) at the J. Edgar Hoover Building (FBI Headquarters) located within the District of Columbia.

7     Greene's statements on the FD-772 that she intended to travel to Germany were false. Instead, her intent was to travel to Turkey, and subsequently to Syria, to meet up with Individual A. She did, in fact, leave for Turkey on June 23, 2014.

8.    On or about June 9, 2014, three days before Greene submitted her falsified FD-772 form, a debit card issued to Greene was used to purchase tickets in Greene's name for round trip travel from ████████ to Gaziantep, a city in Turkey located fewer than 20 miles from the Syrian border. Greene was scheduled to fly from ████████ through Chicago on June 13, 2014 and arrive in Gaziantep, Turkey the following day   Greene's return trip was scheduled to depart from Turkey approximately 26 hours after her arrival. No part of Greene's planned or ticketed travel was through or in Germany.

9.    On or about June 13, 2014 – the day she had been scheduled to depart and two days after submitting her FD-772 form – the same debit card issued to Greene was used to purchase tickets in Greene's name for one-way travel on Air Canada flight ████ on June 23, 2014, from ████████ to Istanbul, Turkey, with a stop-over in ████████  Greene purchased no return tickets. No part of Greene's planned or ticketed travel was through or in Germany.

10.     On June 23, 2014, Greene departed on Air Canada Flight ▆ to Istanbul. Greene traveled from Istanbul to the city of Gaziantep near the Syrian border on June 25, 2014, using her U.S. passport

11.     Upon arrival in Gaziantep, Greene made arrangements through contact with Individual A to have a third party assist her in crossing the Syrian border so as to join Individual A. On or about June 27, 2014, Greene met up with Individual A in Syria, married him, and thereafter lived with him for a period of over 30 days. During that time, Individual A was an active member of ISIL, and engaged in combat against other military forces on behalf of ISIL. During their interactions, Greene informed Individual A that she was employed by the FBI and that the FBI had an open investigation into his activities.

12.     In July 2014, while in Syria, Greene wrote several emails to an individual in the United States which revealed her knowledge that she had committed a criminal act. On July 8, 2014, she sent the following:

> . . . "I was weak and didnt know how to handle anything anymore
> I really made a mess of things this time"

On or about July 9, 2014, Greene wrote another e-mail, stating:

> ". . . I am gone and I can't come back. I am in Syria. Sometimes I wish I could just come back. I wouldn't even know how to make it through, if I tried to come back. I am in a very harsh environment and I don't know how long I will last here, but it doesn't matter, it's all a little too late..."

On or about July 22, 2014, Greene wrote an e-mail which read:

> "Not sure if they told you that I will probably go to prison for a long time if I come back, but that is life. I wish I could turn back time some days. . . . God willing I can arrange things, but better to write my mother in my mother tongue only, few people can read that."

4

13.     Greene returned to the United States on Wednesday, August 6, 2014. At no time during the preceding period of travel did she visit Germany.

14.     Daniela Greene made false statements to the FBI through her FD-772 form regarding her intended itinerary for travel. These misstatements were material to a matter within the jurisdiction of the FBI because they masked her intent to travel to Syria to meet Individual A, an ISIL member. Such travel plans by an FBI employee, had they been revealed to the FBI, would have resulted in a prohibition on such travel and possibly additional administrative actions against Greene. As an employee of the FBI, and at all times relevant to this case, Greene knew that making material false statements on official forms was unlawful.

**SENTENCING CALCULATION**

**A.     STATUTORY MAXIMUMS**

The maximum penalty for making false statements involving international terrorism, in violation of 18 U.S.C. § 1001(a)(3), is a sentence of eight years of incarceration. The Court may impose a term of supervised release of not more than three years pursuant to 18 U.S.C. § 3583(b)(2). Additionally, U.S. Sentencing Guideline § 5E1.2 of the United States Sentencing Commission, Guidelines Manual, ("U.S.S.G." or "Sentencing Guidelines") permits the Court to impose a fine that is sufficient to pay the federal government the costs of any imprisonment, term of supervised release, and period of probation.

**B.     SENTENCING GUIDELINE CALCULATION**

The Sentencing Guideline calculation in the Pre-Sentence Report ("PSR") places the defendant's base offense level at 14. See PSR ¶ 37. Twelve levels are added because the offense involves international terrorism. See PSR ¶ 38. A three-level reduction for the defendant's acceptance of responsibility for the offense is appropriate pursuant to U.S.S.G. § 3E1.1(a) and

5

(b).  See PSR ¶¶ 44, 45.  At the time of this writing, the Presentence report indicates the defendant's criminal history score is zero.[2]  An Offense Level of 23 in conjunction with Criminal History Category I results in a Sentencing Guidelines range of 46 to 57 months of incarceration.

### C.  MOTION TO DEPART FROM SENTENCING GUIDELINES PURSUANT TO U.S.S.G. § 5K1.1

Defendant Greene accepted a plea in this case, and signed an agreement to cooperate with the Government.  However, the defendant's cooperation began prior to her plea, upon her first contact with law enforcement when she was arrested after arriving back in the United States The defendant waived her Miranda rights at the first opportunity, answered questions from law enforcement, and thereafter waived her right to speedy presentment.  She admitted her guilt to the Government at an early stage.  The Government is providing the Court with detailed information regarding the defendant's cooperation in two addendums to be filed in conjunction with the instant pleading.[3]

After being advised of the facts relating to this case and to the defendant's assistance to the Government, the Departure Committee of the United States Attorney's Office for the District of Columbia has authorized the filing of this motion for departure from the Sentencing Guidelines pursuant to U.S.S.G. 5K1.1, as a result of the defendant's substantial assistance to the Government.  Based on the defendant's cooperation, as described herein and in the two addendums to the instant motion, the Government hereby moves the Court to depart from the Sentencing Guidelines in fashioning a sentence in this case because the defendant has rendered substantial assistance to the Government.

---

[2] The Presentence Report states that Accurint records reflect a criminal case number which may be associated with the defendant in North Carolina, but do not reflect a disposition or an offense.

[3] The Government is filing a Classified Addendum to supply information regarding the background of the offense and the circumstances of the defendant's cooperation which remains classified.  An Unclassified Addendum describes the defendant's cooperation in detail.

### SENTENCING RECOMMENDATION

The Government requests that the defendant be sentenced to a term of imprisonment of 24 months of incarceration, to be followed by a three-year period of supervised release. As discussed below, the Government makes this recommendation after considering the sentencing factors enumerated in 18 U.S.C. § 3553(a), the Sentencing Guidelines and policies promulgated by the United States Sentencing Commission, the nature and circumstances of the defendant's criminal actions in this case, her lack of criminal history, her pretrial acceptance of responsibility, as well as cooperation with government agents and officials.

### A.   THE GOVERNMENT'S SENTENCING RECOMMENDATION IS CONSISTENT WITH THE APPLICABLE LEGAL PRINCIPLES

A district court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." United States v. Gall, 552 U.S. 38, 49 (2007). The Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark." Id. at 46-49. The district court should next consider all of the applicable factors set forth in 18 U.S.C. § 3553(a). Id. at 49-50. Indeed, the Guidelines themselves are designed to calculate sentences in a way that implements the considerations relevant to sentencing as articulated in § 3553(a). United States v. Rita, 551 U S. 338, 347-50 (2007).

The § 3553(a) factors include (1) "the nature and circumstances of the offense and the history and characteristics of the defendant"; (2) the need for the sentence imposed to reflect the seriousness of the offense, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, and to provide the defendant with needed correctional treatment; (3) the Sentencing Guidelines and

related Sentencing Commission policy statements; and (4) the need to avoid unwarranted sentence disparities.

Here, the nature and circumstances of the defendant's offense were egregious, and they reflect a need for sentence imposed to reflect the seriousness of the offense, and to deter others from similar actions. The defendant is an employee of a federal law enforcement agency and she was trusted with a Top Secret security clearance which, by definition, provides her with access to information which, if revealed, is likely to cause grave damage to the national security. Her offense – making a false statement involving international terrorism · facilitated her trip to Syria, where there is ongoing fighting and terrorist activity by foreign terrorist organizations, including ISIL, designated by the United States, the country she was duty-bound by her job to defend. In doing so, she endangered our national security by exposing herself and her knowledge of sensitive matters to those terrorist organizations. Her escape from the area unscathed, and with apparently much of that knowledge undisclosed, appears a stroke of luck or a measure of the lack of savvy on the part of the terrorists with whom she interacted. Certainly, the defendant's conduct skirted a line dangerously close to other more serious charges. This rash action by a trusted employee of the FBI deserves severe punishment. The defendant violated the public trust, the trust of the officials who granted her security clearance, and the trust of those with whom she worked and, in doing so, endangered our nation's security. The nature and circumstances of this offense warrant serious punishment.

The history and characteristics of the defendant weigh in the defendant's favor. She lacks a prior criminal record, or any apparent need of treatment available in the Bureau of Prisons. She appears to have accepted responsibility for her crime, admitting it to law enforcement at the first opportunity, and agreeing to cooperate thereafter. The defendant's

emails while still in Syria make clear her realization of her mistakes began even before she was confronted by law enforcement. These factors, taken together with the nature of the crime, suggest that the defendant's risk of recidivism is low.

In addition, as detailed in the Government's addenda to this pleading, the defendant appears to have done all within her power to assist the Government since her arrest. The defendant's cooperation with the Government was significant, long-running, and substantial. After the egregious abuse of her position, the defendant attempted to right her wrongs, and to ultimately assist her country again. This significant effort on behalf of the defendant leads the government to request a downward departure from the anticipated sentencing guidelines in this case. Such a departure would lessen the severity of the defendant's sentence as a reward for her assistance and would encourage others similarly situated to do the same.

The Government recommends that the Court sentence the defendant to a sentence of 24 months of incarceration, a sentence equivalent to approximately one-half of the low end of the anticipated applicable Sentencing Guidelines range of 46 months. Such a sentence appropriately punishes the defendant, and provides important deterrence to others, while still acknowledging the defendant's substantial assistance to the Government.

## CONCLUSION

WHEREFORE, based upon the above and the information reflected in the PSR and the Government's addenda to this pleading, the United States respectfully recommends that the defendant be sentenced to a period of 24 months of incarceration to be followed by supervised release for a period of three years.

Respectfully submitted,

RONALD C. MACHEN JR.
United States Attorney
D.C. Bar No. 447889

By:   _Thomas A. Gillice Atty 884_
THOMAS A. GILLICE
D.C. Bar No. 452336
Assistant United States Attorney
National Security Section
555 4th Street N.W, Room
Washington, D.C. 20530
(202) 252-1791
thomas.gillice@usdoj.gov

## CERTIFICATE OF SERVICE

Undersigned counsel hereby certifies that on the _____19th_____ day of March 2015, a copy of this pleading was forwarded to Shawn Moore, counsel for the defendant, via electronic mail.

_____
Thomas A. Gillice
Assistant U.S. Attorney